IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| AMY HILL, as Personal Representative of the Estate of DAVID HILL, deceased, and in AMY HILL's capacity as an Individual,<br><br>Plaintiff,<br>vs.<br><br>MAJESTIC BLUE FISHERIES, LLC, a Delaware Limited Liability Company, and DONGWON INDUSTRIES CO., LTD., a Foreign Corporation incorporated under the laws of Korea,<br><br>Defendants. | CIVIL CASE NO. 11-00034<br><br>**ORDER AND OPINION RE: DEFENDANT DONGWON INDUSTRIES CO., LTD'S RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Before the court is a Renewed Motion to Dismiss Plaintiff's Complaint ("the Motion") filed by Dongwon Industries Co., Ltd. ("Dongwon"). *See* ECF No. 166. Defendant Dongwon moves to dismiss Plaintiff's Complaint ("the Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See id*. at 3. Plaintiff Amy Hill ("Plaintiff") opposes the Motion, and, in the alternative, moves for leave to amend the Complaint. *See* ECF No. 168. After reviewing the parties' briefs, and relevant cases and statutes, and having heard argument from counsel on the matter, the court hereby **DENIES** the Motion for the reasons stated herein.

## I. RELEVANT FACTUAL BACKGROUND

On October 13, 2009, Captain David Hill executed a contract with Majestic Blue Fisheries, LLC ("Majestic") to act as captain of the F/V *Majestic Blue* ("the Vessel"). Compl. ¶ 48, ECF No. 1. The contract was for three months onboard the Vessel followed by three months of vacation, after which Captain Hill would return for another three months on the Vessel. *Id.* ¶ 51.

Majestic is a Delaware limited liability company and at all relevant times was the record owner of the Vessel. *Id.* ¶ 9. Majestic was formed by Dongwon, a foreign corporation incorporated under the laws of Korea. *Id.* ¶ 10. Dongwon acquired StarKist to expand its global reach and penetrate the U.S. tuna market through a recognized brand. *Id.* ¶ 35. In furtherance of this plan, Dongwon formed Majestic so that it could act as record owner of the Vessel. This would allow the Vessel to fly a U.S. flag instead of a Korean flag, conferring certain benefits. *Id.* ¶ 37(a). Dongwon then transferred the Vessel to Majestic for ten dollars. *Id.* ¶ 37(c).

Although Majestic was the record owner of the Vessel, the relationship between Dongwon and Majestic continued after transfer of the Vessel. *Id.* ¶¶ 9, 37. Dongwon directly paid all employees of Majestic at all relevant times, including Captain Hill when he was captain of the Vessel.[1] *Id.* ¶¶ 37(d), 37(e). Dongwon employees also directly communicated with Captain Hill regarding issues related to his employment with Majestic, and made travel and other logistical arrangements for the crew. *Id.* ¶¶ 37(k), 37(o). Dongwon paid to provision and bunker the Vessel. *Id.* ¶ 37(f). It also made major operational decisions regarding the Vessel, including maintenance, onboard policies and procedures, its daily operations, and the disposition of the entire catch. *Id.* ¶¶ 37(g), 37(h).

Aside from the captains and crewmembers of the Vessel, Majestic only had one

---

[1] The Complaint alleges, however, that Majestic also compensated Captain Hill for his employment. Compl. ¶ 28.

Page 2 of 14

employee, who reported directly to and took orders from Dongwon. *Id*. ¶¶ 37(l), 37(i). Upon transferring the Vessel to Majestic, Dongwon had required Majestic to retain most of the crewmembers who had worked onboard the Vessel prior to the transfer. *Id*. ¶ 37(n). Both Majestic and Dongwon utilized employment websites to recruit American captains and crewmembers for the Vessel. *Id*. ¶¶ 27(c), 43(b).

Captain Hill commenced his second term as captain on or about May 9, 2010, when he arrived in Guam to relieve Captain Thomas Ridenour and meet the Vessel before it departed on the tuna fishing expedition during which the Vessel eventually sank. *Id*. ¶¶ 52, 73. Immediately prior to Captain Hill's arrival in Guam, the Vessel had undergone maintenance work at a Chinese shipyard. *Id*. ¶ 52. Captain Ridenour had directly observed the maintenance work performed on the Vessel, and according to him, the maintenance work was below industry standard and would not pass a detailed inspection. *Id*. ¶¶ 53, 54, 56. Captain Ridenour stated that lack of time, planning, communication, and coordination on the part of Dongwon and Majestic, and the poor quality of the shipyard's maintenance work all contributed to causing serious problems for the Vessel. *Id*. ¶ 55.

On or about May 20, 2010, the Vessel departed Guam to begin a tuna fishing expedition. *Id*. ¶ 73. Captain Hill was the only United States national onboard. *Id*. ¶ 61. All the other officers were Korean nationals, and the remaining crewmembers were either nationals of Korea or of Southeast Asian countries. *Id*. ¶ 62. Although only a handful of people onboard the Vessel spoke English, no translator was provided as was standard practice on other similar vessels. *Id*. ¶ 61.

Other officers of the Vessel were unqualified and/or incompetent. For example, the "Fishing Master" directed the Vessel in the wrong direction when leaving the port of Guam and the Vessel was forced to turn back. *Id*. ¶ 63. The Radio Officer was unable to perform his function properly, which resulted in Captain Hill having difficulty with transmitting required

reports about the Vessel's location and status to Majestic and Dongwon. *Id*. ¶ 65.

Furthermore, the other officers and crewmembers routinely and deliberately ignored the orders of Captain Hill and violated international pollution treaties. *Id*. ¶ 67. Captain Hill's attempts to exercise control over the other officers and crewmembers were futile. *Id*. ¶64. The Fishing Master was treated as the de facto captain of the Vessel. Dongwon and Majestic were aware of these violations as previous captains had reported these problems to them, and one even filed suit,[2] alleging mutiny, abuse by crew, and violations of the International Convention for the Prevention of Pollution from Ships (MARPOL). *Id*. ¶ 69.

On or about June 10 or 13, 2010, the Vessel sank in the West Pacific Ocean after it began taking on water in calm seas and good weather. *Id*. ¶¶ 8, 74, 76. Twenty-two of the twenty-four crewmembers onboard had abandoned ship and were later rescued by the F/V *Pacific Breeze*. *Id*. ¶ 75. After two days of search and rescue by the United States Coast Guard, the two remaining crewmembers, Captain Hill ("Decedent") and the Vessel's chief engineer, were not found. *Id*. ¶ 77.

## II. RELEVANT PROCEDURAL BACKGROUND

On October 26, 2010, Plaintiff filed the Complaint against Dongwon and Majestic (collectively "Defendants") in the U.S. District Court for the Southern District of Florida. *See* ECF No. 1. Plaintiff alleged six claims: (1) Survival Action for Negligence for Pre-Death Pain and Suffering Under the Jones Act Against Majestic and Dongwon; (2) Claim for Wrongful Death Under the General Maritime Law Against Dongwon and Majestic; (3) Claim for Wrongful Death Under the Death on the High Seas Act ("DOHSA") Against Dongwon and Majestic; (4) Claim for Negligence Causing Wrongful Death Under the Jones Act Against Dongwon and Majestic; (5) Claim for Intentional Infliction of Emotional Distress Against Dongwon and

---

[2] *Majestic Blue Fisheries, LLC v. Pine*, Civil Case No. 10-00004 (D. Guam).

Majestic for Amy Hill; and (6) Claim for Invasion of Privacy Against Dongwon and Majestic for Amy Hill.[3]

On November 22, 2010, Majestic filed a motion to dismiss the Complaint for lack of jurisdiction. *See* ECF No. 4. On November 30, 2010, Majestic filed an alternative motion for change of venue. *See* ECF No. 5. On January 18, 2011, Dongwon filed its motion to dismiss for lack of jurisdiction, or in the alternative, motion for change of venue. *See* ECF No. 41.

On September 6, 2011, the U.S. District Court for the Southern District of Florida issued an order transferring the case to the District of Guam. *See* ECF No. 149. The order noted that by filing a Notice of Filing Agreed Order, Defendants Majestic and Dongwon consented to jurisdiction of this action in the District Court for the District of Guam and waived any objections to personal jurisdiction. *Id.*

On February 21, 2012, Defendant Dongwon filed the present Motion. ECF No. 166. On March 6, 2012, Plaintiff filed her opposition to the Motion, and, in the alternative, requested leave to amend the Complaint. ECF No. 168. Dongwon filed its reply to Plaintiff's opposition on March 30, 2012. ECF No. 176. Plaintiff filed a supplement to her response on February 19, 2013. ECF No. 239. Dongwon filed its response to the supplement on February 26, 2013. ECF No. 243. On March 1, 2013, Plaintiff filed her reply to Dongwon's response to the supplement. ECF No. 245. Defendant Majestic is not a party to the present Motion.

**III.    JURISDICTION AND VENUE**

Jurisdiction is proper. All four of the remaining counts in the Complaint are within the court's federal question jurisdiction. *See* 28 U.S.C. § 1331. This action is also within the court's diversity jurisdiction. *See* 28 U.S.C. § 1332.

---

[3] On September 6, 2011, Plaintiff consented to voluntary dismissal of Count V (Intentional Infliction of Emotional Distress) and Count VI (Invasion of Privacy) of the Complaint. *See* ECF No. 148. On the same day, the court issued an order dismissing Counts V and VI. *See* ECF No. 149.

1 All parties have consented to venue in the District of Guam. *See* ECF No. 149; 28 U.S.C. § 1404(a).

## IV. APPLICABLE STANDARDS

### A. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides that, in response to a claim for relief, a party may assert a defense of "failure to state a claim upon which relief can be granted" by way of motion. FED. R. CIV. P. 12(b)(6). Whether a party has sufficiently stated a claim for relief is viewed in light of Federal Rule of Civil Procedure 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to Rule 8, a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard under Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009) (internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). The court must engage in a two-step procedure to determine the plausibility of a claim. *Id*. at 678–79. First, the court must weed out the legal conclusions—that is "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in the pleading that are not entitled to a presumption of truth. *Id*. at 678. Second, the court should presume the remaining factual allegations are true and determine whether the claim is plausible. *Id*. at 679.

A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common

Page 6 of 14

Case 1:11-cv-00034 Document 260 Filed 04/12/13 Page 6 of 14

sense" to determine the plausibility of a claim given the specific context of each case. *Id*. at 679.

## B. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] *when justice so requires*." FED. R. CIV. P. 15(a)(2) (emphasis added). In deciding whether justice requires granting leave to amend, factors to be considered include "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

While leave to amend should be granted liberally, there are some limitations. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). For instance, leave to amend need not be granted if it "constitutes an exercise in futility." *Id*.; *see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court need not grant leave for futile amendments). Additionally, the court has particularly broad discretion to deny leave to amend if a plaintiff has previously amended the complaint. *Ascon Props., Inc.*, 866 F.2d at 1160.

## V. ANALYSIS

Defendant Dongwon moves the court to dismiss Counts I and IV under Federal Rule of Civil Procedure 12(b)(6). It also moves the court to strike Plaintiff's demands for nonpecuniary damages (Count II), punitive damages (Count II), and attorneys' fees (Counts I–IV). *See* ECF No. 166. Plaintiff opposes the Motion and, in the alternative, requests leave to amend. *See* ECF No. 168.

## A. COUNTS I & IV: JONES ACT SURVIVAL AND WRONGFUL DEATH CLAIMS

Plaintiff asserts two counts against both Dongwon and Majestic pursuant to the Jones Act, 46 U.S.C. § 30104. Compl. 21, 26. The court discusses the merits of both counts herein.

The Jones Act provides:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104. The Federal Employers' Liability Act ("FELA") sets forth the recovery for personal injury to, or death of, railway employees. 45 U.S.C. § 51 et seq. It provides a remedy for wrongful death and a survival action upon a showing of the employer's negligence. 45 U.S.C. §§ 51, 59. "To prevail on a Jones Act negligence claim *against his employer*, a seaman must show (1) that the is a seaman under the Act; (2) that he suffered injury in the course of employment; (3) that this employer was negligent; and (4) that his employer's negligence caused his injury at least in part." *Martin v. Harris*, 560 F.3d 210, 216 (4th Cir. 2009) (emphasis added).

### 1. An Action Under the Jones Act Can Proceed Against Multiple Defendants, but Only One Defendant Ultimately Can Be Deemed the Jones Act Employer and Held Liable.

Defendant Dongwon argues that only one employer may be sued under the Jones Act. It argues that since Plaintiff has sued both Dongwon and Majestic, asserting that both were Decedent's Jones Act employers, and has failed to plead in the alternative, the Jones Act claims against Dongwon must be dismissed. In Counts I and IV, Plaintiff "demands judgment against Defendants Dongwon *and* Majestic Blue" for breach of their duty of reasonable care pursuant to the Jones Act. Compl. ¶¶ 91, 107 (emphasis added).

In *Cosmopolitan Shipping Co. v. McAllister*, the Supreme Court stated that there is "no

doubt that under the Jones Act only one person, firm, or corporation can be sued as employer." 337 U.S. 783, 791 (1949). The Ninth Circuit noted that "[o]f the relatively few courts since *Cosmopolitan* to consider the issue, most have interpreted this language to mean that *a plaintiff can hold only one employer liable under the Jones Act*." *Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1500 (9th Cir. 1995), abrogated on other grounds by *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009) (emphasis added). In *Glynn*, the plaintiff sued both the vessel owner and the captain under the Jones Act. The district court had determined that the vessel owner was the employer as a matter of law, but left to the jury to determine whether the captain was also an employer. 57 F.3d at 1497. The Ninth Circuit held that submitting the captain's employer status to the jury was error because a plaintiff can hold only one employer liable under the Jones Act. Since the district court had already determined as a matter of law that the vessel owner was the Jones Act employer, the captain could not also be deemed an employer and held liable. *Id.* at 1500.

Here, like in *Glynn*, Plaintiff is suing two entities under the Jones Act. The Ninth Circuit did not reverse the district court on the basis that Glynn proceeded against two defendants, but rather because the district court had already held as a matter of law that the vessel owner was Glynn's employer. Thus, at this stage of the proceeding, the Jones Act claims against Defendant Dongwon should not be dismissed merely because Plaintiff asserts that both Dongwon and Majestic were Decedent's employers. The Ninth Circuit has "long held that whether an employer/employee relationship exists is usually a question of fact for the jury, so long as there is an evidentiary basis for its consideration." *Glynn*, 57 F.3d at 1498. The issue that there can only be one Jones Act employer can be addressed adequately at the summary judgment stage or at trial with jury instructions and a special verdict form. Consequently, the Motion to dismiss Plaintiff's Jones Act claims against Dongwon in Counts I and IV on this ground is **DENIED**.

### 2. **Plaintiff Has Alleged Sufficient Facts to Support a Jones Act Employer-Employee Relationship.**

Defendant Dongwon's second ground for dismissal of Plaintiff's Jones Act claims is that Plaintiff has failed to allege sufficient facts demonstrating that Dongwon was Decedent's employer. As stated, a Jones Act action may only be brought against the seaman's employer. In *Cosmopolitan*, the Supreme Court indicated that in determining the Jones Act employer "[o]ne must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?" 337 U.S. at 795. *See Glynn*, 57 F.3d at 1499 (applying the *Cosmopolitan* factors to determine "whether a Jones Act employment relationship exists"). The court will examine each question in turn.

*Whose orders controlled the master and the crew?* Plaintiff asserts that Dongwon made Majestic's major operational decisions, including those regarding maintenance, onboard policies and procedures, and the daily operations of the Vessel. Compl. ¶¶ 37(g), 37(h). Dongwon's employees communicated directly with the captains of the *Vessel* regarding their employment. *Id.* ¶ 37(k). Dongwon also determined the disposition of the entire catch brought in by the Vessel. *Id.* ¶ 37(j).

*Whose money paid their wages?* Plaintiff alleges that Dongwon directly paid all the employees of Majestic, including Captain Hill. *Id.* ¶¶ 37(d), 37(e). She also asserts that Majestic compensated Decedent for his services as well. *Id.* ¶ 28.

*Who hired the crew?* When Dongwon transferred the Vessel to Majestic, it required that Majestic retain most, if not all, of the crewmembers who had worked on board the Vessel before the transfer. *Id.* ¶ 37(n). Both Dongwon and Majestic utilized employment agencies to recruit officers and crewmembers for the *Vessel*. *Id.* ¶¶ 37(p), 27(c). In the case of Captain Hill, Plaintiff

Page 10 of 14

alleges that the employment contract was negotiated and executed by Majestic. *Id*. ¶ 28.

*Whose initiative and judgment chose the route and the ports?* There are no specific allegations regarding who decided the routes and the ports. Plaintiff asserts, however, that Dongwon made all of Majestic's major operational decisions and decisions regarding the daily operations of the Vessel. *Id*. ¶¶ 37(g), 37(h).

The allegations show that Dongwon exercised operational control over the Vessel and its crew, that it paid the wages of the crew, and played a role in hiring and retaining crewmembers for the Vessel. Taking the allegations of the Complaint as true, as the court must at this stage of the proceeding, and "look[ing] at the venture as a whole," the court can reasonably infer that an employer-employee relationship existed between Captain Hill and Defendant Dongwon according to the factors set forth in *Cosmopolitan*. 337 U.S. at 795. The court finds that Plaintiff has pled "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 555 U.S. at 678 (internal quotation marks omitted). Thus, the Motion to dismiss Plaintiff's Jones Act claims against Dongwon in Counts I and IV on this ground is **DENIED**.

### B.   COUNT II: GENERAL MARITIME LAW WRONGFUL DEATH CLAIM

As stated above, Plaintiff's Complaint includes claims for wrongful death under general maritime law, DOHSA, and the Jones Act. *See* Compl., ECF No. 1. As part of her damages claims in Count II, Plaintiff's demands include pain and suffering and punitive damages. *Id*. ¶ 96. Dongwon requests the court strike her claims for such damages.[4]

Under DOHSA, recovery "shall be a fair compensation for the *pecuniary* loss sustained

---

[4] In the Motion, Dongwon requested the court dismiss Count II of the Complaint because Plaintiff "may not bring a *cause of action* under general maritime law" when DOHSA applies. Def.'s Mot. at 6, ECF No. 166 (emphasis added). However, at the hearing on the Motion, Attorney Hector Ramirez stated that Dongwon is *not* arguing that Plaintiff cannot proceed with a general maritime law claim. Rather, Dongwon is arguing only that Plaintiff cannot obtain nonpecuniary damages under the general maritime law claim. The court construes this as Dongwon abandoning its initial argument that Count II of the Complaint should be dismissed in its entirety. Therefore, the court's analysis will only focus on the more limited issue of whether the claims for nonpecuniary damages in Count II should survive the motion to dismiss.

by the individuals for whose benefit the action is brought." 46 U.S.C. § 30303 (emphasis added). In *Mobil Oil Corp. v. Higginbotham*, the Supreme Court held that when DOHSA applies, a decedent's survivors may not also recover nonpecuniary damages, such as loss of society, under general maritime law. 436 U.S. 618, 624–25 (1978). In finding that Congress' judgment controls the availability of remedies for wrongful death actions involving death on the high seas, the Court stated:

> Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements. There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.

*Id.* at 625 (internal citations omitted). Similarly in *Miles v. Apex Marine Corp.*, the Supreme Court reaffirmed the reasoning in *Higginbotham* and held that when the Jones Act applies, it precludes recovery of nonpecuniary damages under a general maritime law wrongful death claim. 498 U.S. 19, 31–33 (1990).

The Ninth Circuit has directly addressed whether punitive damages are available under a general maritime law wrongful death claim when it is joined by actions under DOHSA and the Jones Act in *Bergen v. F/V St. Patrick*, 816 F.2d 1345 (9th Cir. 1987). In *Bergen*, a storm arose while a fishing vessel was thirteen miles from shore, outside territorial waters. The vessel rolled onto its side and the crew abandoned ship. Ten crewmembers died; two survived but were seriously injured. *Id.* at 1347. The estates of the decedents brought claims under the Jones Act, DOHSA, and general maritime law, and the district court awarded the estates punitive damages in addition to damages for pre-death pain and suffering, and for loss of support, services, and inheritance. *Id.* at 1347–48. However, the Ninth Circuit noted it had previously held that "[p]unitive damages are non-pecuniary damages unavailable under the Jones Act. Punitive

Page 12 of 14

Case 1:11-cv-00034   Document 260   Filed 04/12/13   Page 12 of 14

damages are therefore also unavailable under DOHSA." *Id*. at 1347 (citing *Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir. 1984)). The court went on to hold that "pecuniary remedies available under DOHSA therefore cannot be supplemented by punitive damages under the general maritime law" and "that where an action under DOHSA is joined with a Jones Act claim, neither statutory scheme may be supplemented by the general maritime law or by state law." *Id*. at 1349.

Based on these precedents, it is clear that nonpecuniary damages, such as pain and suffering and punitive damages, are not available under general maritime law when DOHSA and/or the Jones Act apply. However, at this point in the proceeding it is premature to determine first, Defendants' liability under DOHSA or the Jones Act, and second, what impact that determination may have on the general maritime law claim and recoverable damages. Accordingly, the request to strike the Plaintiff's claim for pain and suffering and punitive damages in Count II is **DENIED**.

### **C.     ATTORNEY'S FEES**

In Counts I–IV, Plaintiff demands "attorney's fees as permitted." Compl. ¶¶ 91, 96, 102, 107. Generally, the prevailing party in an admiralty case is not entitled to attorney's fees absent statutory authorization. *B.P. America Trading, Inc. v. Vessel Panamax Nova*, 784 F.2d 975, 977 (9th Cir. 1986). However, courts sitting in admiralty have carved out exceptions to this general rule pursuant to their power to grant equitable relief. *Id*.; *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962). Thus, to state a claim for attorney's fees, Plaintiff must allege either statutory authorization for attorney's fees or entitlement to equitable relief.

Neither DOHSA nor the Jones Act provides for attorney's fees. *See* 46 U.S.C. §§ 30301 et seq.; 46 U.S.C. § 30104. In *Vaughan*, *supra*, the Supreme Court awarded attorney's fees in a claim for maintenance and cure where defendants were "callous in their attitude" and the

"default was willful and persistent," forcing the plaintiff "to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old." 369 U.S. at 530–31. Admiralty courts have also awarded attorney's fees for failure to pay wages and bad faith in commencing or conducting an action. *See Su v. M/V Southern Aster*, 978 F.2d 462, 475 (9th Cir. 1992); *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).

Although neither DOHSA nor the Jones Act provides for attorney's fees, the court finds that Plaintiff's demands for attorney's fees in Counts I–IV should not be stricken at this juncture. In light of Plaintiff's request of attorney's fees only as permitted by law and precedent that a court sitting in admiralty can award attorney's fees pursuant to its power to grant equitable relief, the Motion is **DENIED** on this ground.

## VI. CONCLUSION

Based on the foregoing discussion, the court hereby **DENIES** the Motion in all respects.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
  **Chief Judge**
**Dated: Apr 12, 2013**